IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 2005 Session

**MEMPHIS HEALTH CENTER, INC., by Sadie Davis and Cornelia Berry, Directors, and Morristein J. Holman, Chief Executive Officer and Director**
**v.**
**GREGORY GRANT, DEAN JOHNSON, CYNTHIA COMBS, CLAUDETTE BRANCH, ERNEST HUGHES, LEAOLA CRUTCHFIELD, BETTY MILLER, FREDERICK SANDERS, EDDIE DANDRIDGE, DYRIE GOODS, and BROWN McGHEE, individually and in their capacity as the Board of Governors of Memphis Health Center, Inc.**

An Appeal from the Chancery Court for Shelby County
No. CH-04-1188-2     D. J. Alissandratos, Chancellor

No. W2004-02898-COA-R3-CV - Filed July 28, 2006

This is a derivative action. The board chairman of a nonprofit health care center was found guilty of submitting false claims in violation of federal law. Thereafter, the health care center's chief executive officer and two of its board members filed a derivative action on behalf of the health care center against the chairman and health care center's remaining board members for violating their fiduciary duties to the corporation. The derivative suit sought, *inter alia*, injunctive relief to require the board to take action against the board chairman, and to enjoin the board from allegedly violating the CEO's employment agreement by terminating her. The trial court issued a temporary restraining order, enjoining the board from violating the health care center's bylaws, from violating federal regulations, and from terminating the employment of the CEO. Subsequently, the trial court found the defendant board members guilty of contempt for violating that order and entered a permanent injunction against the defendants. The permanent injunction awarded in the contempt action removed the defendants from the board and permanently barred them from the premises. The defendants appealed. We affirm, finding that the trial court's action was warranted in the face of the board's failure to take action regarding the board chairman after the federal judgment for filing false claims was entered against him.

**Tenn. R. App. P. 3; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Kathleen L. Caldwell, Memphis, Tennessee, for Defendants/Appellants, Gregory Grant, Dean Johnson, Cynthia Combs, Claudette Branch, Ernest Hughes, Leaola Crutchfield, Betty Miller, Frederick Sanders, Eddie Dandridge, Dyrie Goods, and Brown McGhee, individually and in their capacity as the Board of Governors of Memphis Health Center, Inc.

Robin H. Rasmussen, Memphis, Tennessee, for Plaintiff/Appellee, Memphis Health Center, Inc., by Sadie Davis and Cornelia Berry, Directors, and Morristein J. Holman, Chief Executive Officer and Director.

## OPINION

This appeal arises out of a derivative action initiated in the Chancery Court for Shelby County on behalf of Memphis Health Center, Incorporated ("Memphis Health Center"), a Tennessee non-profit corporation, by Plaintiff/Appellee Morristein J. Holman ("Holman"), the chief executive officer of Memphis Health Center, against the Board of Governors of Memphis Health Center (collectively, "Board" or "Defendants").

On June 18, 2004, Holman, individually and as Chief Executive Officer of Memphis Health Center, filed a verified complaint[1] in the Chancery Court for Shelby County on behalf of Memphis Health Center against the Defendant/Appellant Board members, individually and in their capacity as the Board of Governors of Memphis Health Center. The complaint sought injunctive relief, both temporary and permanent, prohibiting the Board from violating the Bylaws of Memphis Health Center, violating the rules and regulations of the United States Department of Health and Human Services ("HHS"), violating Holman's employment contract with Memphis Health Center, interfering with the day-to-day operations of Memphis Health Center, coming upon the premises of Memphis Health Center without furnishing prior notice to Holman, and taking any action to amend the Bylaws until the court made a final decision in the case. Additionally, Holman requested reimbursement for her attorney's fees and expenses incurred in prosecuting the derivative claim against the Board.

The complaint stated that Holman was the Chief Executive Officer of Memphis Health Center and named the following Board members as Defendants: Gregory Grant, the Chairman of the Board ("Chairman Grant"); Dr. Dean Johnson, Vice Chairman; Cynthia Combs, Secretary; Claudette Branch, Treasurer; Cornelia Berry; Sadie Davis; Reverend Ernest Hughes; Leaola Crutchfield; Betty Miller; Dr. Frederick Sanders; Eddie Dandridge; Dyrie Goods; and, Dr. Brown McGhee. Additionally, the complaint alleged that the Board failed to comply with the Bylaws of Memphis Health Center and interfered with Holman's performance of her responsibilities as Chief Executive Officer pursuant to her employment agreement. Holman asserted as well that the Board failed to comply with the HHS regulations regarding the operation of non-profit facilities.

---

[1]Verification of the complaint by a plaintiff is required in a derivative suit, pursuant to Tennessee Code Annotated § 48-56-401(c) (2002).

In support of the assertion that the Board failed to comply with the Bylaws of the corporation, a copy of the Memphis Health Center Bylaws was attached to the complaint. The alleged violations of the Bylaws included the following: (1) that two Board members did not meet the qualification requirements for Board service; (2) that the Board did not maintain a vita on each Board member as required in the Bylaws; (3) that the Board did not comply with the Bylaw requirements for termination of board members who fail to attend meetings, specifically, Defendants Cynthia Combs and Claudette Branch; and (4) violation of the Bylaws by Defendant Board Secretary Cynthia Combs by not attending all meetings, recording all votes, keeping minutes of all proceedings, distributing minutes to Board members, and giving notice of all board meetings. The complaint also alleged that the Board acted outside its scope of responsibility of establishing corporate policy, as set out in the Bylaws, by interfering with Holman's responsibilities as the Chief Executive Officer in the day-to-day operation of Memphis Health Center. Holman averred that Chairman Grant frequently interfered "with the daily operation and staff of [Memphis Health Center]" and took "unilateral action to obligate the corporation without [Holman's] knowledge." The complaint further alleged that the Board failed to hold meetings specifically provided for in the Bylaws, instead rescheduling those meetings for later dates and failing to give notice of the specially scheduled meetings.

The complaint also alleged that Chairman Grant told others that he intended to terminate Holman's employment. Holman maintained that Grant's statements compromised and undermined her ability to discharge her responsibilities as Chief Executive Officer.

Finally, the complaint set forth allegations that the Board had violated federal rules and regulations. In support of this contention, Holman attached a December 4, 2001 letter from HHS, detailing various conditions to be remedied in order to continue receiving federal grant funding. Holman acknowledged that the issues set forth in the letter had been addressed, except for one issue. The letter expressed concern about the Board's interference in the day-to-day operations of Memphis Health Center:

> There is a serious breakdown of organizational discipline due to the Board's involvement in the day-to-day operation of the health center. The CEO's inability to exert control in this environment raises concern about the ability of the health center to serve its patients and to safeguard federal funds.

The complaint alleged that, despite this warning from HHS, Chairman Grant continued to interfere with the day-to-day operations of Memphis Health Center.

The complaint sought temporary and permanent injunctive relief, to enjoin Grant and the Board from (1) violating the Bylaws, (2) violating the HHS rules and regulations, (3) violating Holman's employment agreement or taking any action to terminate her employment, or (4) amending the Bylaws. It also sought an injunction prohibiting Grant from contacting Memphis Health Center staff members, being involved in its day-to-day operations, or coming onto the premises of Memphis Health Center without giving Holman 24 hours notice. On June 21, 2004, Chancellor Arnold Goldin issued the temporary restraining order as requested, granting Holman all of the relief sought except

for the request to enjoin Grant from contacting staff members, being involved in the day-to-day operations or coming onto the premises without prior notice to Holman.

On June 25, 2004, Chancellor Goldin entered an order, indicating that counsel for the Defendants had sought clarification of the temporary restraining order, and directing the Board to conduct a meeting to determine whether Holman should be suspended, with pay, during the prosecution of the instant derivative suit. The Chancellor appointed a special master to monitor the Board meeting and ensure that the meeting was conducted in accord with both court-imposed directions for the meeting and the Memphis Health Center Bylaws.

On June 28, 2004, the Special Master filed a report recommending certification of the vote in the court-ordered Board meeting. In the report, the Special Master detailed the Board's approximately ten-minute meeting and the Board's nine-to-four vote on a resolution to suspend Holman from her duties as Chief Executive Officer of Memphis Health Center with pay.[2] The resolution claimed that Holman had "covered up" sexual harassment complaints and had not informed the Board of the matter, resulting in the filing of a sexual harassment lawsuit against Memphis Health Center. It stated that the suspension with pay was "not to be construed . . . as termination" of Holman's employment.

The next day, June 29, 2004, Holman filed notices of voluntary dismissal of the claims against Defendants Sadie Davis and Cornelia Berry, both individually and in their capacity as members of the Board.

On the same day, June 29, 2004, prior to the filing of any responsive pleadings and only eleven days after filing her original complaint, Holman filed an amended complaint. The amended complaint reiterated the allegations of the original complaint, but also added two plaintiffs, Memphis Health Center Board members Sadie Davis and Cornelia Berry (collectively with Holman, "Plaintiffs"). The amended complaint also claimed that Holman, as Chief Executive Officer of Memphis Health Center, was an *ex officio* member of the Memphis Health Center Board. The

---

[2] Although tangential to her sole court-defined duty as Special Master, the Special Master's report specified other matters relating to the daily operations of Memphis Health Center of which the Special Master thought the trial court should be aware. The report explained that the Board should appoint an individual to assume the role of the acting Chief Executive Officer:

> Employees complain that they do not know who has the authority to give orders or make decisions. According to the unnamed employees, there are two (2) board members who simply took on the responsibility of giving orders. There has been nothing in writing to inform the staff of the proper channels for problems. It appears that the immediate assistant to [Holman] has also been relieved of her duties by these two board members, namely [Chairman Grant] and Betty Miller.

The report also said that some employees had told the Special Master that Board members had removed boxes of records and documents from Memphis Health Center and had attempted to access payroll records that they were not authorized to obtain. The Special Master's report indicated that this was significant because Holman was enjoined from the premises and "has had no way to obtain records which will assist her in prosecuting her case."

amended complaint specified that it was a derivative action, filed pursuant to Tennessee Code Annotated section 48-56-401, *et seq.*, sought the same injunctive relief and explained why the Plaintiffs had not made any demand to the Board for redress of the claimed violations:

> Plaintiffs would further show that any demand upon the Defendants to correct the willful, wanton and grossly negligent conduct in which they have engaged would be futile in that the Defendants have a direct interest in continuing to breach their fiduciary duty and violate the Bylaws and federal rules and regulations and, therefore, are not independent and that the conduct of the Defendants is not protected by the business judgment rule. In support of this allegation, Plaintiffs would show that in spite of the issuance of a temporary restraining order by this Honorable Court, the Defendants have violated the spirit of the restraining order by suspending [Holman] from her position as Chief Executive Officer. Further Defendants have continued to engage in the day-to-day operation of [Memphis Health Center] rather than confining their role to that of setting policy and procedure and have engaged in the specific acts as alleged in [this complaint].

The amended complaint was verified by both Holman and Sadie Davis.

In July 2004, at the Plaintiffs' request, Chancellor D. J. Alissandratos extended the temporary restraining order until trial, which was then set for August 18, 2004. As a result, the Defendants remained temporarily enjoined from violating the Memphis Health Center Bylaws, violating the HHS rules and regulations, taking any action to terminate Holman, or taking any action to amend the MHC bylaws.

On August 3, 2004, the Defendants filed answers to the original and amended complaints. Each answer asserted the same affirmative defenses and asserted that the Plaintiffs were not entitled to any relief sought. Primarily, the Defendants argued that Plaintiffs did not meet the requirements for a derivative action, in part, because Holman, as an *ex officio* non-voting member of the Board of Directors, did not qualify as a "director" within the meaning of the applicable statutes. The Defendants also asserted affirmatively that the Board had acted appropriately, exercising good business judgment.

On August 13, 2004, the Plaintiffs filed a petition for civil contempt against the Defendants, arguing, *inter alia*, that the Defendants had not complied with the injunctive orders issued by the trial court. The Plaintiffs asserted that, after issuance of the TRO, the Defendants continued to violate several provisions of the Bylaws, particularly by failing to remove Chairman Grant from the Board for conduct unbecoming a Board member—a ground for removal in the Bylaws. In support of this allegation, the Plaintiffs asserted that, on June 17, 2004, the United States District Court for the Western District of Tennessee found that Chairman Grant violated the federal False Claims Act, 31 U.S.C. § 3729-33, by submitting 3,306 false claims. Consequently, a judgment was entered against Grant for $5,929,719.21. The petition for civil contempt alleged additional violations of the Bylaws, including: the improper administration of Board elections; inadequate record keeping; Chairman

Grant's unauthorized signing of medical service provider contracts without Board approval; the Secretary's failure to provide the requisite notice to Board members of impending Board meetings; insufficient public notice of Board meetings for public attendance in violation of the Tennessee Open Meetings Act; unauthorized Board members redeeming certificates of deposit and converting funds to other accounts; unauthorized Board action against Holman by suspending her without Bylaw authorization to suspend the Chief Executive Officer; improper Board involvement in the day-to-day operation of MHC; and unauthorized payment of attorney fees.

A month later, on September 13, 2004, the Defendants filed a motion for summary judgment. The motion simply stated that summary judgment was appropriate because there were no issues of material fact and "Defendants are entitled to judgment as to a matter of law, as to all issues in this action." Any accompanying memorandum of law in support of this motion was not made part of the record on appeal.

On September 30, 2004, the trial court held a hearing on the Plaintiffs' petition for civil contempt. At the outset of the hearing, the Defendants made an *ore tenus* motion to dismiss, arguing primarily that the Plaintiffs lacked standing to bring a derivative action.[3] In the oral motion, the Defendants contended that Holman lacked standing to bring a derivative action under Tennessee Code Annotated section 48-56-401 because she was only an *ex officio* member of the Memphis Health Center Board, and not a director or member within the meaning of the statute. The Defendants also argued that Holman did not comply with Tennessee Code Annotated section 48-56-401(c) in that she neither made a demand on the Board nor alleged that her failure to make a demand was excused on the basis of futility. The Defendants maintained that Plaintiffs Sadie Davis and Cornelia Berry, although members of the Board, lacked standing because they failed to meet the pleading requirements of Rule 23.06 of the Tennessee Rules of Civil Procedure, requiring that the complaint set forth with particularity the reasons for not making a demand on the Board. Finally, the Defendants asserted that the only two plaintiffs with standing to bring a derivative action, Davis and Berry, failed to verify the complaint.[4]

In response, the Plaintiffs argued that the Board was interested and controlled by the Chairman, and therefore any demand on the Board for remedial action would be futile, citing the assertion to that effect in the amended complaint. Additionally, Plaintiffs maintained that Holman was a member of the Board, citing Article VI, section 7, of the Bylaws, stating that the Chief Executive Officer shall serve as an *ex officio* non-voting member of the Board.

---

[3]Counsel for the Defendants originally framed the oral motion in terms of jurisdiction, but no issues regarding jurisdiction were argued.

[4] Even though Plaintiff Sadie Davis verified the amended complaint, counsel for the Defendants claimed that Davis testified in a discovery deposition that, contrary to the verification she signed, she was unable to swear to the allegations in the original complaint incorporated by reference into the amended complaint. Apparently, the trial court did not credit this argument. Davis' deposition is not in the record, so this Court has no means by which to review this argument.

After hearing the arguments, the trial court concluded that Holman was a member of the Board for the purposes of Tennessee's derivative action statute. The court also found that Plaintiffs Davis and Berry were members of the Board, and that paragraph 9 of the amended complaint stated sufficient justification for excusing the demand. Consequently, the trial court denied the Defendants' motion to dismiss.

After determining that the Plaintiffs had standing and that the demand requirement had been met, the trial court examined the contempt issues raised by the Plaintiffs—the first being whether the Board violated the Bylaws by not taking action to remove, or at least investigate, Chairman Grant for conduct unbecoming a Board member.[5] In support of this claim, the Plaintiffs submitted to the court a copy of the United States District Court's judgment against Chairman Grant, finding him guilty of 3,306 counts of fraud under the federal False Claim Act. The Plaintiffs maintained that this was sufficient proof to obligate the Board, in its fiduciary capacity, to investigate the truth of the claims against Grant and consider terminating him for conduct unbecoming a Board member.

Counsel for the Defendants stipulated that there were no issues of material fact on this issue and did not dispute the authenticity of the federal judgment against Grant. The Defendants admitted that the federal judgment against Grant was public knowledge and that the Board had made no inquiries into it. In defense of the Board, counsel for the Defendants argued only that the federal judgment against Grant was not final because it was being appealed, and, consequently, it was reasonable for the Board to refrain from taking any action to investigate the claims until the federal appeal was resolved. The Defendants also noted that the Board had "been extraordinarily busy handling what they have been handling," and argued that only three months of inaction was insufficient to hold the Board in contempt. Addressing the judgment against Grant, counsel for the Defendants asked rhetorically, "Is it conduct unbecoming? I am not going to argue that it is not unbecoming. It is not something that any organization would like. It is not something Mr. Grant would like."

Next, the trial court heard argument on the issue of whether the Board's suspension of Holman with pay violated the injunctive order directing the Board to refrain from taking any action to terminate Holman's employment. The parties agreed that, on this issue, there were no material facts in dispute. The Plaintiffs argued that the Board's suspension of Holman "violated the spirit of the Court's injunction," effectively terminating Holman's employment by suspending her and barring her from the premises. The Plaintiffs argued that the Bylaws did not authorize such action. In response, the Defendants noted that Holman was suspended with pay, not terminated, and argued that this was done in order to put Holman in a position where she could do no harm to Memphis Health Center while the derivative suit was pending.

---

[5] Article III, section 5, subsection c, of the MHC Bylaws provides, "Any Board member who does not discharge his/her duties, or is convicted of a felony or exhibits conduct unbecoming a Board member, may be terminated by two-thirds (2/3) vote of the entire membership of the Board of Governors at a regular or special meeting called for that purpose."

Finally, the Plaintiffs alleged that the Defendants violated the provision in the injunctive order prohibiting the Board from violating HHS rules and regulations regarding the operation of a nonprofit health care center. First, the Plaintiffs alleged that Chairman Grant improperly negotiated a $100,000 certificate of deposit without Board approval. Secondly, the Plaintiffs alleged that Memphis Health Center's Chief Financial Officer expressed concern to its interim Chief Executive Officer regarding the mishandling of certain cashier's checks. In response, on the issue regarding the $100,000 certificate of deposit, the Defendants maintained that Grant in fact obtained Board approval for his actions, so a factual issue was presented. On the other allegations on the mishandling of cashier's checks, the trial court found from argument of counsel that the Plaintiffs' evidence was insufficient. Consequently, the trial court heard testimony only on the issue of whether the Board approved the cashing of the $100,000 certificate of deposit.

The first witness the Plaintiffs called to testify was Betty Miller, the acting secretary of the Board who was responsible for the minutes of all Board meetings. Despite the fact that the minutes were subpoenaed for the hearing, Miller testified that she did not bring the minutes to the hearing. She first stated that the Executive Committee of the Board approved Grant's negotiation of the certificate of deposit, and then later recanted that assertion. Miller testified she did not recall any full Board vote on negotiation of the $100,000 certificate of deposit, which was required under the Bylaws.

Memphis Health Center's interim Chief Executive Officer, Sandra Randolph, asserted that the proceeds from the certificate of deposit were used for the Center's payroll, but had no direct knowledge of Board approval of the negotiation of the certificate of deposit. Likewise, the Chief Financial Officer, Carolyn Tippet, had no direct knowledge of Board approval. Finally, the Defendants called Claudette Branch, a Board member and Defendant, who testified that she recalled a Board meeting in which the Board ratified a report of the financial committee that included redemption of the certificate of deposit. No minutes of such a Board meeting were produced at the hearing.

At the close of the hearing, the trial court stated, "There is zero proof in this Court's record that is credible to this Court that indeed the Board has approved the cashing of this $100,000 [certificate of deposit]." The trial judge noted that Branch was the only Board member who testified, without later recanting, that the Board approved redemption of the certificate of deposit, and the trial judge stated that he did not "find her very credible." The trial court emphasized that the Defendants' witnesses "did nothing meaningful to try to comply with [the subpoena for financial records and meeting minutes]." The court continued:

> They all do know . . . or some of them have testified that they knew that the Department of Health and Human Services had forewarned them over two years ago about cashing these [certificates of deposit], how careful they should really be about that. And here's this cavalier approach, so cavalier that even today on this moment of trial, no minutes are brought, no person other than one that the Court has found to be not credible who even attended such a Board meeting.

-8-

The trial court held the Defendants in contempt with respect to each of the three issues. It found that the Board had an affirmative obligation to address conduct unbecoming a Board member, and a particular obligation to at least investigate the judgment of violation of the federal False Claims Act against Chairman Grant, and that it failed to do so on the four occasions that the Board met after the entry of the federal judgment, even once after the temporary restraining order went into effect. Second, the trial court found that the Bylaws authorized the Board to either select or dismiss the CEO, but that it had no authority to suspend the CEO with pay. On this basis, the trial court found that the suspension of Holman with pay was a violation of the injunctive order. Third, the trial court concluded that the $100,000 certificate of deposit was redeemed without Board approval, also in violation of the injunctive order. Therefore, the trial court held the Defendant Board members in contempt of court. After the hearing, the Plaintiffs filed a motion for their attorney's fees and expenses.

A written order to the effect of the trial court's oral ruling was entered on October 14, 2004. In the written order, the trial court also set out its equitable remedy to address the violation of the injunctive order. First, the trial court removed all Board members with the exception of Plaintiffs Sadie Davis and Cornelia Berry. Special Master Deborah Henderson was ordered to act as Chairperson of the Board and, with the assistance of the remaining Board members, to select new Board members. The Special Master was also directed to investigate and determine whether to remove Dr. Sandra Randolph as Chief Executive Officer, to determine whether other employees hired by the Defendants during the pendency of the litigation should be removed, and to investigate and determine whether Holman should be reinstated as chief executive officer "pending any action by the newly-selected Board of Governors pursuant to the Bylaws." Finally, the trial court instructed the Special Master to make any further recommendations deemed necessary for the continued operation of Memphis Health Center.

On October 6, 2004, one week before the trial court entered its final order in this matter, counsel for the Plaintiffs had filed a motion for an award of reasonable attorney's fees and expenses. On October 25, 2004, the trial court granted the Plaintiffs' motion for attorney's fees and expenses, noting that counsel for the Defendants did not object to the motion. Memphis Health Center was ordered to pay over $25,000 in attorney's fees and expenses to the attorneys for the Plaintiffs.

Finally, on October 25, 2004, the trial court entered a consent order on the Plaintiffs' motion for additional time to respond to the Defendants' September 13, 2004 motion for summary judgment. The consent order acknowledged that the trial court's contempt order disposed of all of the issues raised in the Defendants' motion for summary judgment. Consequently, the Plaintiffs' motion for additional time was deemed moot, and the October 14, 2004 contempt order was deemed a final order. The defendants now appeal the contempt order.

On appeal, the Defendant Board members urge this Court to reverse the trial court on three grounds. First, the Defendants argue that the trial court erred in denying the Defendants' oral motion to dismiss and in failing to hear the Defendants' motion for summary judgment. In support of this argument, the Defendants assert that the Plaintiffs lacked standing to bring a derivative action, failed

to fulfill the statutory prerequisites for bringing such an action, and also argue that the derivative action failed to state a claim upon which relief could be granted. In addition, the Defendants argue that the trial court exceeded its jurisdictional powers. Finally, the Defendants contend that the trial court erred in granting the Plaintiffs' petition for civil contempt.

On appeal, this Court reviews the trial court's findings of fact *de novo* upon the record, accompanied by a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's legal conclusions, however, are reviewed *de novo* and are not entitled to any presumption of correctness. **Union Carbide Corp. v. Huddleston**, 854 S.W.2d 87, 91 (Tenn. 1993).

The Defendants' first assignment of error stems from the trial court's denial of the oral motion to dismiss, made by the Defendants at the outset of the September 30, 2004 hearing on the Plaintiffs' petition for contempt. On appeal, the Defendants essentially urge this Court to find that the trial court erred in denying the motion to dismiss on several grounds: (1) the Plaintiffs did not have standing to bring a derivative action; (2) the lawsuit failed to meet statutory prerequisites for a derivative action; (3) the verification requirement for a derivative action was not met; (4) the complaint failed to state a claim upon which relief could be granted; and, (5) the court failed to hear and rule on the Defendants' motion for summary judgment.

Generally, the proper party to bring a lawsuit on behalf of a corporation is the corporation itself, acting through its directors or a majority of its shareholders. **Lewis v. Boyd**, 838 S.W.2d 215, 221 (Tenn. Ct. App. 1992) (citing **Daily Income Fund, Inc. v. Fox**, 464 U.S. 523, 531-32 (1984); **State v. Mitchell**, 58 S.W. 365, 368 (Tenn. 1899)). Tennessee courts have historically been reluctant to interfere with the internal workings of corporations or intrude on the managerial responsibilities of directors. **Id**. at 220 (citing **Chism v. Mid-South Milling Co.**, 762 S.W.2d 552, 556 (Tenn. 1988); **Wallace v. Lincoln Sav. Bank**, 15 S.W. 448, 449–50 (Tenn. 1891)). Where disinterested directors act in good faith and with an honest belief that their decisions further the corporation's interests, the court will decline to substitute its judgment for that of the board of directors. **Id**. (citing **French v. Appalachian Electric Coop.**, 580 S.W.2d 565, 570 (Tenn. Ct. App. 1978)). This is referred to as the business judgment rule.

The derivative action is a limited exception to the rule that the corporation itself is the proper party to bring a lawsuit on its own behalf. "A derivative action is an extraordinary, equitable remedy available to shareholders when a corporate cause of action is, for some reason, not pursued by the corporation itself." **Id.** at 221 (citing **Kamen v. Kemper Fin. Servs., Inc.**, 500 U.S. 90 (1991)). Essentially, a derivative action is a suit brought by one or more members, directors, or shareholders of a corporation, "on a corporation's behalf to redress an injury sustained by, or to enforce a duty owed to, a corporation." **Id**. (citing **Daily Income Fund, Inc. v. Fox**, 464 U.S. 523, 527-29 (1984); **Bourne v. Williams**, 633 S.W.2d 469, 471 (Tenn. Ct. App. 1981)). In Tennessee, derivative actions are largely governed by statute.

To guard against misuse of the derivative action, preconditions to such lawsuits are imposed. Tennessee Code Annotated section 48-56-401(2002) sets forth the requirements for a derivative action filed on behalf of a nonprofit corporation. We review only those provisions relevant to the instant action. First, to bring a proceeding on behalf of a domestic or foreign corporation to procure a judgment in the corporation's favor, the plaintiff must be a "director" of the corporation. T.C.A. § 48-56-401(a)(2). Second, each plaintiff must be a director at the initiation of the proceeding. *Id.* § 48-56-401(b). In addition, several pleading requirements must be fulfilled. The complaint must be verified and must allege, with particularity, the demand made to obtain action by the directors. *Id.* § 48-56-401(c). It must explain either why the action sought from the directors was not obtained or why no demand was made on the directors. *Id*. This is known as the demand requirement. *See Lewis*, 838 S.W.2d at 221.

In this case, the Defendants first argue that the trial court erred in denying their motion to dismiss because the Plaintiffs lacked standing to bring a derivative action. The Defendants contend that Holman was not a "director" of Memphis Health Center, as required in Tennessee Code Annotated section 48-56-401(a)(2), and therefore had no authority under the statute to bring a derivative action on behalf of Memphis Health Center to procure a judgment in its favor. Tennessee Code Annotated section 48-51-201(10) defines "director" as "natural persons, *designated in the charter or bylaws* or elected by the incorporators . . . to act as members of the board, irrespective of the names or titles by which such persons are described." T.C.A. § 48-51-201(10) (emphasis added). Article III, section 3, subsection d, of the Memphis Health Center Bylaws governs the composition of the Board of Directors; it states that the Chief Executive Officer is an "ex-officio non-voting member to the Board." Article VI, section 7, of the Memphis Health Center Bylaws provides that "[n]o employee of MHC [Memphis Health Center] shall be eligible for election to the Board while still in employment status . . . . Notwithstanding the above, the Chief Executive Officer shall serve as ex-officio non-voting member of the Board." In Article X, the Bylaws provide that the Chief Executive Officer, as an ex-officio member of the Board, is considered "an ex-officio member of all committees except the Executive Committee." Finally, under the Bylaws, while the general public is permitted to attend Memphis Health Center board meetings, the chief executive officer as an *ex officio* member of the Board is also entitled to attend standing committee meetings. The issue, then, is whether the term "director" under section 48-51-201(10) is limited to full voting members of the corporate board of directors or whether it can include an *ex officio* member of the Board such as Holman. The question is close, but on balance we must conclude that, considering all of the Bylaw provisions set forth above, an *ex officio* member of the Memphis Health Center Board of Directors falls within the meaning of the term "director" in section 48-51-201(10) and therefore has standing to maintain a derivative action against the corporation.

The Defendants also assert that Plaintiff Cornelia Berry lacked standing because her term as a director was scheduled to end in October 2004, and she was not eligible for renewal. The statute, however, clearly provides that, to bring such a proceeding, each plaintiff need only be a director "at the time of bringing the proceeding." T.C.A. § 48-56-401(b). It is undisputed that Plaintiff Berry was a director at the time she and the other Plaintiffs filed the amended complaint. This argument is without merit.

The Defendants next argue that the Plaintiffs failed to comply with the statutory demand requirement for a derivative action. Tennessee Code Annotated section 48-56-401(c) requires the complaint to "allege with particularity the demand made, if any, to obtain action by the directors . . . or why [the plaintiffs] did not make the demand." Tennessee courts have imposed a demand requirement on derivative actions for more than a century. *Lewis*, 838 S.W.2d at 221 (citing *Akin v. Mackie*, 310 S.W.2d 164, 167 (Tenn. 1958); *Deaderick v. Wilson*, 67 Tenn. (8 Baxt.) 108, 131 (Tenn. 1874)). However, when such a demand would be futile, that is, "idle ceremony," Tennessee caselaw provides that the demand requirement may be excused. *Humphreys v. Plant Maint. Serv., Inc.*, 1999 WL 553715, at *6 (Tenn. Ct. App. July 30, 1999); *Lewis*, 838 S.W.2d at 221. Typically, in a "demand excused" case, a plaintiff claims that a demand would be futile because the board is interested and not independent, and, consequently, the court examines the interest and independence of the corporate decision-makers. *Humphreys*, 1999 WL 553715, at *6 (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)).

In the case at bar, the original complaint did not include any reference to the demand requirement, either by alleging that a demand was made or that a demand would be futile. The amended complaint, however, included such an allegation. Paragraph nine of the amended complaint alleged that any demand "would be futile in that the Defendants have a direct interest in continuing to breach their fiduciary duty and violate the Bylaws and federal rules and regulations, and, therefore, are not independent." The trial court heard this argument as part of the Defendants' oral motion to dismiss; it noted that while the evidence at trial might show that the demand should not be excused, the allegation in the amended complaint was sufficient to survive the motion to dismiss. We find no error in the trial court's conclusion on this issue.

The Defendants next argue that the trial court erred in denying the motion to dismiss because the derivative action was brought without being verified. Tennessee Code Annotated section 48-56-401(c) provides that a complaint in a derivative action must be verified. T.C.A. § 48-56-401(c). The Defendants acknowledge that the original complaint was verified by Plaintiff Holman, but contend that she was not competent to do so because, as only an *ex officio* member of the Board, she had no standing to file the derivative action. As noted above, we conclude that, under the circumstances of this case, Holman had standing to file the lawsuit, and therefore her verification of the original complaint is sufficient. We find no error in the trial court's holding on this issue.

The Defendants next argue that the complaint fails to state a claim upon which relief could be granted. Without citation to authority, the Defendants assert that a violation of the bylaws of a corporation, violation of an employment contract, and violation of federal rules and regulations are not recognized causes of action on behalf of a corporation in Tennessee. From our review of the amended complaint, however, the Plaintiffs primarily allege a breach of the Board members' fiduciary duty to the corporation. It is undisputed that the directors of a corporation owe a fiduciary duty to the corporation to "faithfully pursue the interest of the organization, and its nonprofit purpose, rather than his or her own financial or other interests, or those of another person or organization." *Summers v. Cherokee Children & Family Serv., Inc.*, 112 S.W.3d 486, 504 (Tenn. Ct. App. 2002); *see also Nelms v. Weaver*, 681 S.W.2d 547, 549 (Tenn. 1984). If the directors

breach their fiduciary duty, they may be held jointly and severally liable to the corporation. ***Resolution Trust Corp. v. Block***, 924 S.W.2d 354, 357 (Tenn. 1996). Consequently, this argument is without merit.

Here, one of the Plaintiffs' primary allegations was that the Chairman of the Board was found to have committed thousands of violations of the federal False Claims Act, and that the Board refused to take action to remove him or even to investigate, and that this inaction was a violation of their fiduciary duty to Memphis Health Center. This allegation was clearly actionable. Consequently, this argument is without merit.[6]

The Defendants argue as well that the trial court erred by failing to hear and rule on the Defendants' motion for summary judgment at the September 30, 2004 hearing.[7] The Tennessee Rules of Civil Procedure provide that a motion for summary judgment must be served at least thirty days before the time fixed for a hearing. Tenn. R. Civ. P. 56.04. This rule is mandatory, not discretionary, and exists to ensure that the responding party will have sufficient time to file, among others, any responsive affidavits and discovery depositions. ***Craven v. Lawson***, 534 S.W.2d 653, 655 (Tenn. 1976). The Defendants' motion for summary judgment was filed only seventeen days before the September 30, 2004 hearing, and the Plaintiffs explicitly declined to waive the thirty day requirement. Under these circumstances, the trial court did not err in refusing to address the Defendants' motion for summary judgment at the September 30, 2004 hearing on the Plaintiffs' petition for contempt.

The Defendants' next assertion of error by the trial court is that the trial court exceeded its jurisdictional powers. The Defendants argue first that the trial court's consideration of general allegations of violations of federal rules and regulations "created a mixed bag of jurisdictional issues making [Memphis Health Center] a quasi-federal agency with the opportunity to be defended by the U.S. Attorney General in Federal Court." The Defendants continue, "The lower court refused to recognize this jurisdictional issue and erred by denying Defendants' Motion for Summary Judgment issue of lack of jurisdiction controverted to a Motion to Dismiss issue." After a sincere attempt to

---

[6]Part of the basis for our holding stems from the procedural posture of this case. The lawsuit was, in essence, resolved when the trial court addressed the allegations of contempt of court. Consequently, we review whether the trial court had sufficient basis to issue the injunctive order, consider the Plaintiffs' allegations that the Defendants had violated the injunctive order, and grant the relief ordered for the Defendant's contempt of court. To do so, we need not parse through the numerous allegations in the complaint to determine which are actionable; it is sufficient if the primary allegation of failure to take action against Chairman Grant was adequate basis for the trial court's actions.

Indeed, there may be serious question of whether a derivative action is the appropriate vehicle for a plaintiff such as CEO Holman to seek relief for a violation or even, in this case, an anticipated violation of her employment agreement. Even assuming, however, that such allegations are not actionable in a derivative lawsuit, the allegation of inaction in the face of Chairman Grant's misconduct were ample basis for the trial court to proceed.

[7]On October 25, 2004, the Defendants entered into a consent order stating that "the Defendants' Motion for Summary Judgment has been decided pursuant to the Order on Petition for Citation for Civil Contempt heretofore entered on October 14, 2004 and that said Order should be treated as a final order."

understand this issue as stated, the Court is simply unable to do so. No legal authority is cited in support of this argument. This Court has previously held that the "failure to cite authority for propositions in arguments submitted on appeal constitutes a waiver of the issue." *Messer Griesheim Industries, Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003); *see also Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001) (explaining that a party's failure to make a legal argument and cite authority in support of the party's position on appeal will constitute a waiver of that issue). Therefore, we deem this issue, as stated, to be waived.

The Defendants also contend that the trial court exceeded its jurisdictional powers by allowing the Special Master to exceed her appointed duties. Again, no legal authority is offered to support the argument, nor do the Defendants explain how the outcome of this case was affected by allegedly permitting the Special Master to exceed her designated duties, nor how this deprived the trial court of jurisdiction. This argument is without merit.

The Defendants maintain as well that the trial court exceeded its jurisdictional authority in that the October 14, 2004 order on contempt "deprives the Defendants of their rights." Claiming that some of the Defendants have "urgent medical needs, including diabetes and other conditions that require regular monitoring," the Defendants argue that the trial court's order enjoining the Defendants from entering onto the premises of Memphis Health Center "constitutes a violation of federal law and as such violates the constitutional rights of the Defendants and could deprive them of life and liberty under color of state law." No legal authority is cited in support of this grab bag of conclusory allegations. This argument is also without merit.

The Defendants assert further that the removal of the Defendants from the Memphis Health Center Board violates the federal Volunteer Protection Act of 1997, codified at 42 U.S.C. § 14501, *et seq.* The Defendants' argument, in its entirety, is as follows:

> The law governing volunteers is encompassed in Federal Law, i.e., the Volunteer Protection Act of 1997. This Act provides certain protections to volunteers, nonprofit organizations and governmental entities in lawsuits based on the activities of volunteers. Tennessee law is not broader than said Act, and therefore the doctrine of federal pre-emptions (sic) should be applied.

In general, the Act seeks "to provide certain protections from liability abuses related to volunteers serving nonprofit organizations and governmental entities." 42 U.S.C. § 14501(b). The Act, however, is not applicable when a civil action is brought "by any nonprofit organization . . . against any volunteer of such organization or entity." *Id.* § 14503(b). In this case, a derivative suit was brought on behalf of Memphis Health Center, a nonprofit organization, seeking primarily injunctive relief against the volunteer Board member Defendants. We must conclude that the federal Volunteer Protection Act of 1997 is not applicable under these circumstances.

Finally, the Defendants' argue that the trial court erred in granting the Plaintiffs' petition for contempt, primarily on the basis that the Defendants did not violate the trial court's injunctive order.

-14-

In order to address this assertion of error, the appellate court must ascertain whether the trial court's order was one of civil or criminal contempt. *See, e.g., LeCroy-Schemel v. Cupp*, 2000 WL 1130683, at *3 (Tenn. Ct. App. Aug. 10, 2000). The distinction between the two has both substantive and procedural ramifications. *See Bailey v. Crum,* 183 S.W.3d 383, 387 (Tenn. Ct. App. 2005); *Sanders v. Sanders*, 1997 WL 15228, at *3 (Tenn. Ct. App. Jan. 17, 1997). The rights of the parties, the quantum of proof, and the procedural due process afforded to the respondents depends on the classification of the contempt; consequently, the label attached by the petitioners or the trial court is not dispositive. Instead, this Court looks at the nature of the proceedings below, and not the name attached to the proceedings, to determine whether they were in prosecution of civil or criminal contempt. *See Sanders*, 1997 WL 15228, at *2.

Civil contempt proceedings are often initiated by a private party when another party has not complied with a court order; the initiation of the action is for the benefit of the petitioning litigant. *Doe v. Bd. of Prof. Responsibility of the Supreme Court of Tennessee*, 104 S.W.3d 465, 473 (Tenn. 2003); *Sanders*, 1997 WL 15228, at *2. To find the respondent guilty of civil contempt, only a preponderance of the evidence is required. *Doe*, 104 S.W.3d at 474. The punishment for civil contempt is intended to be coercive; the remedy is temporary by nature. *Id.* at 473; *Sanders*, 1997 WL 15228, at *2. Holding an individual in civil contempt is an available remedy "only when the individual has the ability to comply with order at the time of the contempt hearing." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). It is often said that the party held in civil contempt holds the keys to the jail because he may purge himself of contempt by complying with the court order. *Id.*

Criminal contempt proceedings also punish an individual for failing to comply with a court order, but are intended to be punitive and unconditional, not coercive and temporary. *See, e.g., Sanders*, 1997 WL 15228, at *2. Criminal contempt is a tool to "vindicate the dignity and authority of the law, and the court as an organ of society." *Black v. Blount,* 938 S.W.2d 394, 398 (Tenn. 1996). Criminal contempt may arise during a civil proceeding, but, more so than civil contempt, "raise[s] an issue between the public and the accused." *Id*. Because of the finality of the punishment, the accused in a criminal contempt proceeding is entitled to greater procedural protections than the accused in a civil contempt proceeding. For instance, the respondent is presumed innocent, and must be proven guilty beyond a reasonable doubt. *See, e.g., id.* The respondent is entitled to the privilege against self-incrimination. *Sanders*, 1997 WL 15228, at *3. Criminal contempt also requires more exacting procedural safeguards than civil contempt; for criminal contempt, the respondent is entitled to notice that he faces criminal contempt sanctions and must be afforded an opportunity to present evidence of innocence or any other available defense. *Id*. (citing *Cooke v. United States*, 267 U.S. 517, 537 (1925)).

In this case, the petition for contempt filed by the Plaintiffs stated that it was for civil contempt, asking only that the Defendants be found in contempt, that Plaintiff Holman be permitted to resume her duties as CFO, and for "other, further and general relief. . . ." However, the classification of contempt as either civil or criminal does not depend on the nomenclature used by the petitioners, but rather depends "upon the action taken by the court to address the contempt."

***Ahern v. Ahern***, 15 S.W.3d 73, 78 (Tenn. 2000). Here, the remedy imposed did not involve the typical remedies for criminal contempt, *i.e.* fines or jail time. Nevertheless, the remedy imposed by the trial court, removal of all of the Defendants from the Memphis Health Center Board, was certainly permanent in nature; these Defendants were afforded no opportunity to eventually comply with the injunctive order. Under these circumstances, we must conclude that the contempt was criminal in nature and review it as such.[8]

In ***Barber v. Chapman***, this Court articulated the appropriate standard for reviewing criminal contempt cases on appeal:

> In a criminal contempt case, the guilt of the accused must be established beyond a reasonable doubt. ***Black v. Blount***, 938 S.W.2d 394, 398 (Tenn. 1996) (citing ***Robinson v. Air Draulics Engineering Co.***, 377 S.W.2d 908, 912 (Tenn. 1964)). However, on appeal, individuals convicted of criminal contempt lose their presumption of innocence and must overcome the presumption of guilt. "Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." ***Thigpen v. Thigpen***, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993) (citing Tenn. R. App. P. 13(e)). Furthermore, appellate courts review a trial court's decision of whether to impose contempt sanctions using the more relaxed abuse of discretion standard of review. ***Hawk v. Hawk***, 855 S.W.2d 573, 583 (Tenn. 1993).

***Barber v. Chapman***, 2004 WL 343799, at *2 (Tenn. Ct. App. Feb. 23, 2004)*. Accord **Moody v. Hutchison***, 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004).

In this case, the first and most serious allegation of contempt stemmed from the Board's failure to consider removal, or even investigate, Chairman Grant's conduct after the United States District Court entered a judgment against him, finding him guilty of 3,306 acts of fraud. Notably, the facts regarding this allegation were undisputed; the Defendants took no action to investigate the judgment despite the fact that the full Board convened on four occasions following the rendering of the federal judgment and at least once after the trial court's injunctive order was entered. The authenticity of the federal judgment was not called into question. The legal duty of the Board to take action to protect the corporation was likewise not questioned; the Defendants never contested the Plaintiffs' assertion that the Bylaws imposed a duty on the Board to address the unbecoming conduct of any Board member. Astonishingly, the only defense presented for the Board's inaction was that the final order of the United States District Court was being appealed to the United States Court of Appeals. The trial court rightfully found this excuse wholly inadequate.

---

[8]The Defendants raise no issue on appeal regarding whether the notice they received was sufficient to meet the requirements for notice of a criminal contempt proceeding.

Under these circumstances, we cannot conclude that the trial court erred in finding that the Board violated the injunctive order by failing to comply with the Memphis Health Center Bylaws and act in the best interests of the corporation. Indeed, the contempt is established based on undisputed facts, and therefore guilt is proven beyond a reasonable doubt.

Certainly the remedy imposed by the trial court, wholesale removal of the entire Board except for the Plaintiffs, is breathtaking in scope. Even so, given the grave nature of the federal court's judgment against Chairman Grant and the inexplicable indifference to it exhibited by the Board, the trial court's remedy is not unreasonable. Clearly the Defendants were not going to protect Memphis Health Center from Grant. The trial court was left with little choice. We find no abuse of discretion in the trial court's decision to impose criminal contempt sanctions and in the remedy ordered.

Since the remedy imposed was warranted to address this first allegation of contempt, it becomes unnecessary for this Court to review the Defendants' remaining factual arguments regarding the findings of contempt. Therefore, all other issues raised on appeal are pretermitted.

The decision of the trial court is affirmed. The costs of this appeal are assessed to the Appellants/Defendants Gregory Grant, Dean Johnson, Cynthia Combs, Claudette Branch, Ernest Hughes, Leaola Crutchfield, Betty Miller, Frederick Sanders, Eddie Dandridge, Dyrie Goods, and Brown McGhee, individually and in their capacity as the Board of Governors of Memphis Health Center, Inc., and their surety(ies), for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE

-17-